May it please the Court, Scott Arnold for the Appellant, WSP USA Solutions. The question presented in this case is whether work performed during Option Year 3 is to be paid using fixed rates specified for Option Year 3 or rates specified for Option Year 2. The government and the ASPCA below see that Option Year 2 rates should apply because the task orders were issued first during Option Year 2. The task order was issued during Option Year 2 and if the performance had been in the performance period for Option Year 2, it would have been paid at Option Year 2 rates, right? That's correct and there was no issue about that. Some of the work in these, a small amount of the work for these three task orders that were necessitated by the hurricanes was performed in the last few weeks of Option Year 2, but a large majority of the work was performed afterwards. If you didn't get, let's say you didn't get Option Year 3, what would your obligation have been with respect to completing the work orders that were issued under Option Year 2? Had the government not exercised Option Year 3, they would have been limited in what they could order. I know the government has argued and the ASPCA noted below that if Option Year 3 had not been exercised, we wouldn't even be having this discussion, but what the government would not have been able to do is order the vast majority of the services that they ordered. Okay, but the stuff that was, the task orders that were issued while Option 2 was still in effect, wouldn't you have been obligated, wouldn't the contractor have been obligated to complete that under Option 2 rates, if not for Option 3 being implemented? The contractor would have been obligated to complete the work, the services that were actually ordered during Option Year 2, which is actually a very small amount of the... Wait, I'm getting, can we, I want to make sure that we're being precise and clear. The task orders have larger amounts in them, right? And then you issue work orders to actually do specific projects under that task order, don't you? Actually the task orders are structured so that when a task order is issued, there's a certain amount of funding and there's a certain, there are services ordered for a specific period of performance. And when each of the three task orders at issue were issued in late September of 2017, the services ordered were for a relatively short period of time, anywhere from just a few days to about two weeks, all within Option Year 2. Now there were many modifications to the task orders and the... No, no, can we, before you move on to that, let's say there was still money left under the task order that was issued during Option Year 2. Could you issue a work order under that task order after the time period for Option Year 2 had expired? You could, the way the government administered the task orders was to issue modifications to the task orders to add funding, to add to the period of performance, essentially to order new services. Wait, wait, don't say, I mean, you may think it's essentially, but let me, I want to get back to the modification issue, because doesn't the government have the right under the changes clause that's inserted into this contract to modify these task orders? The government has the right to modify the task orders, but they don't have the right to change the underlying contract rate pricing that was established when the contract was awarded for the right to perform... Do they have the right to change the period of performance for the task order? Yes. And isn't that what they did? They did, and they were able to extend the period of performance... Why doesn't that mean that the period of performance for the task orders issued under CLIN 2 no longer ended at the end of option year two, but was extended through whatever the amendments were? Because the contract doesn't say that. The contract doesn't have to say that, though, does it? If the government is allowed through the changes clause to, which there are, you know the record, the changes are in here, the modifications are in here, they were signed by a representative from your client. They extended the performance for the task orders issued under CLIN 2 to include later dates. So that means the performance period that was originally set for one year extended further. So why doesn't that mean that the pricing applicable to that performance year also extended throughout that period of performance? Because the task order does not govern over the contract. The task order does not actually establish the pricing. The pricing was established when the contract was awarded. There was an order... But doesn't the contract establish that the pricing for the task order is the pricing for the CLIN it's issued under, which in this case was CLIN 2, and that doesn't mean that you can't change the period of performance. I take it your view is that even if you can change the period of performance, that it automatically goes up to the higher rate. Yes, and that's because the contract... But I think that proves too much because if they hadn't exercised option 3 and they changed the period of performance, we would still be under CLIN 2 rates, right? If they hadn't exercised option 3, they wouldn't have been able to order most of the services that they ended up ordering and that they needed to order because of the hurricanes. Why not? Because the contract, you can't order, they'd have no authorization, there would be no more funding, they'd be outside the ordering period. So they were fine ordering for work to be performed through the end of option year 2 and they were also fine to continue ordering for services that were performed over another year, actually slightly more than a year. As a factual matter, were the modifications that are at issue here, did they all take place before October 22nd for work later performed or were some of the modifications before October 22nd and some of them after? A large majority of them were after October 22nd, 2017. And if the, I think I'm understanding this right, but the government's exercise of option year 3 was back in August before the hurricanes. So you were already, you already had an option year 3 extension of this contract in place when all of this started, right? Exactly. And the government, it was a good thing that the government exercised that option. At that time, nobody knew what was going to happen in September 2017. But we had these devastating hurricanes. Can I just, I mean to pursue a little bit more, but I think at least either the same or a variation of what Judge Hughes was asking, let's assume there was no extent, no exercise of the option in August to extend this to year 3. And there was a task order issued before October 22nd, so we're still, well the contract is still in effect. And that task order later, first of all, if it's just that task order and the work goes beyond what is now the end of the contract, at that point this FAR provision kicks in. Is that right? The FAR 52.2.16.21, the requirements that says you have to continue the work? The requirements clause says you have to continue the work, but the requirements clause does not purport to address at what pay rate. Right. I didn't ask that yet. That was the next question. You still, but that's what would require you to perform the task order even when the contract has ended. Now what would be the rate for the work done after October 22nd on the assumption, counterfactual, that option year 3 had not been exercised? If option year 3 had not been exercised, the government would have been entitled to obtain the services at option year 2 rates, but with severe limitations. They would not have been able to, the government doesn't get $600 million in funding at one time. That's not the way it works here. They got multiple modifications, added $10 million, $20 million, $30 million, $40 million over the course of the overall period of performance, mostly in option year 2. So the government only has a certain amount of funding available during option year 2. So I guess I'm still trying to understand several counterfactual things. Let's assume there was no option year 3 exercise, and I guess I sort of have two questions. A task order issued before October 22nd, we're all talking hypothetical now, right, ends up requiring work done after October 22nd. Without more, what rate would govern the pay for that work? Option year 2, but it could only go for six months because if the government had two types of options that it could exercise in this contract, it exercised the option to extend the term of the contract to add an entire additional year. Okay, I think I got that point. Now the related question, then I'll stop. Task order issued, again, I'm assuming no exercise of option year 3. Task order issued before October 22nd. Can the government on October 24th issue a change to the previously issued task order? They may be able to if they had exercised the option to extend services clause, but that would be, but they didn't do that. That's the six month? That's the six month, and they didn't do that. Why does it need to be the option to extend services clause? Why can't it be the changes clause that was in the contract, incorporated into the contract that allows them to modify the period of performance for the task order? They have to have the funding. These modifications not only change the period of performance, but they added the funding in too. But if they, that's the problem. If they hadn't exercised option year 3, they're not going to get additional funding. They needed to exercise the option so that there's a vehicle under which they could place new orders. How do we know that they weren't going to get, couldn't they move? I don't understand that argument, and maybe you can elaborate that. How do we know that they couldn't, in the modification, just added funding to option year 2? There's an ordering clause in the contract, FAR clause. It's at appendix page 58. Paragraph A, 10,058. 52216-18. Yes. Paragraph A tells us that the government can issue orders from the day of contract award through the expiration date of the base year of the contract, unless extended in accordance with FAR 52-217-9 option to extend the term of the contract. So when the government exercised option year 3 in August of 2017, it was giving itself the flexibility to continue placing orders from October 2017 through October 2018, right? What? You can't talk over me. I'm missing the connection between why this order clause prevents the government from adding in funds to plan 2, which is what it did in these modifications. Well, they can do that while plan 2 is in force. But after October 21st, 2017, plan 2 ends, the ordering period ends if the option year 3 has not been executed. But they've already made the order under the task order. So what we're talking about is, does this ordering clause limit the ability of the government to mod that task order? Not issue a new one. I completely agree. If they tried to issue a new task order after plan 2 issued, they couldn't do it under plan 2. They're not arguing that. They're arguing, I think, that they issued a proper task order, and the mods were to a properly issued task order, adding in both funding and changing the period of performance. What prohibits them from doing that? If the ordering period had ended by virtue of option year 3 not being exercised, there would be no authorization for them to issue new orders. They didn't issue a new order, though. That's the thing. Are you saying that even though it's termed a modification to the underlying task order, it's essentially a new order? I am, Your Honor. But then you have to challenge the legality of that modification. One, you didn't do it in the 30 days you're usually supposed to. Two, you countersigned those mods. Your Honor, let me address that. The modifications did allocate funding to the QIN for option year 2. The modifications to the task orders did not change the pricing terms of the contract itself. It did not change the... I understand that. But the problem here, and I hope that the government doesn't write contracts like this very often because it is really, really hard to understand, but I'm also aware that we have lots of these umbrella contracts with option years and CLINs and task orders and work orders, and I'm worried that the argument you're making is going to upset the way that business is normally done. What I don't think they said was carrying over option year 2 prices to option 3 orders. What they did was change the period of performance for a task order issued properly under CLIN 2, which I still haven't heard an argument why they're not entitled to do that under the changes clause that was incorporated into this contract. The changes clause doesn't enable the government to change the pricing that was already established in the contract. But they didn't change the pricing if... Their argument effectively does that. Well, it may effectively do it, but it may not legally do it. If they were allowed... Let me start over. I know you're beyond your time, so I'll just try this one more. CLIN 2 task orders are governed by CLIN 2 pricing, right? You agree with that? Normally performed during option year 2. Normally the period of performance for CLIN 2 would have ended that October. October 21, 2017. Is that performance period unalterable? It's not unalterable. The government has flexibility to order more services, and they did that. If you pay CLIN 2 prices for CLIN 2 period of performance, and the government alters the period of performance for CLIN 2 from one date to another, why aren't CLIN 2 prices still applicable? Because the contract section B and contract section F links the rates to CLINs and links the CLINs to period of performance. You're not answering my question, though, because under the changes clause, they're allowed to change that period of performance. So the period of performance in the contract for the option years can be changed for a specific task order. Can it not? The government can extend the task orders through modifications, but when they do that and they extend the period of performance into option year 3, and they're getting new money to do it, they're essentially issuing new orders. That goes to, and I'm just trying to understand. I know this is what I think Judge Toronto was trying to get at, but if there was no option 3, if there was no year 3, what could they have done as a result of task orders in year 2? What compliance could they have gotten, and could they have modified the task orders after the expiration of year 2 and gotten some performance? Was that when you answered you got six months? Was that the six-month answer? If they had exercised the option to extend services provision, they would have had flexibility for some limited extensions, but it would have been for six months, and significantly, it would not have covered the period of performance that was actually necessary to restore all the power on these islands, which took over a year. Well, there were like 20, between 20 and 30 modifications that took place during option order 3031, the big one for Puerto Rico. There were 23 task orders, and there were 23 modifications, excuse me, and over 95% of the funding was not even available until option year 3, so the orders, if you will, for option year 2 was a small portion of this. The government has... Wasn't all that funding that was available from option year 3 moved into option year 2 by the modifications? Yes, and some of it properly so for the work that was actually still performed during option year 2. But then they started to move it back for the subsequent modifications as well. They did that unilaterally. Yes, WSP signed what were essentially unilateral modifications. But you had the right to challenge them and file equitable adjustments showing that you had increased costs and you were entitled to more money because of that. You didn't do that, right? Actually, we had a right to file an equitable adjustment claim to be paid under the terms of the contract as it was awarded. That's what we did because our position is that when the government refused to pay option year 3 rates... Was the task order ever issued under option year 3? No, but the task orders were modified with new funding added and new services ordered many times during option year 3. I guess I'm concerned because you're... And I'm concerned about what the government did here too, don't get me wrong. But your argument seems to be that what the government effectively did was award task orders. I'm trying to figure out how the law requires us to interpret what was a task order issued under CLIN 2 and modified under the changes clause, which are allowed to do multiple times to change the period of performance. Why legally in government contracts is strange. You obviously do it, so you know that there are really complicated rules with the FAR and stuff. Why legally the government wasn't entitled to do what it did, even though it seems like the better course and what it should have been doing was issue a task order under option year 3 and give you the option year 3 rates. The answer why shouldn't the government have been able to do that is because the contract said otherwise. The contract... Again, I don't agree with that. The problem is the contract says one thing, but the changes clause that's also incorporated in the contract says another thing. And I don't see a conflict between those two. There's not a conflict between the changes clause and the pricing provisions in the contract. What the government is arguing is that we can issue task orders and we can modify them for over a year. And it all relates back to what CLINs were available when the task order was originally issued. And there are two problems with that. One is the contract doesn't say that at all. It simply doesn't say that. The contract links CLIN applicability to the contractor's period of performance. And from a practical level, when the government issued these additional modifications, it was ordering new work. So if the logic is that it should all be based upon... Why don't you come in when it did this and say, this isn't a modification. This is a new task order. It should be issued under CLIN 3. You didn't do that for any of these modifications, did you? Your Honor, we didn't articulate the position that way. And I would say that there was no need to. What we did argue was that the contract says, regardless of when the task order is issued, it's based upon when the services are ultimately delivered. So for delivered services in option year 2, option year 2 rates. Services delivered in option year 3, option year 3 rates. That's what the contract says. Doesn't it say period of performance, not actually delivered? It says period of performance in the context of deliverables in section F of the contract. We're far beyond our time. While we stir some rebuttal, let me hear from the government. Thank you. Good morning. Good morning, Your Honors. And may it please the Court. Pricing is not a contract term that's left to chance. Before you get into your argument, can I ask you sort of a more global question or general question that Judge Hughes touched on in one of his questions, which is, how expansive is what we're asked to decide here?  To me, there's so few cases. There's one case from the Court of Claims or from the Board that the Board cites. Is this a one-off case or is this a practice that is followed by the government in a million instances where you've got option 2 and option 3 and you get task orders and various things and the numbers change and the government applies absolutely? If the task order or modification is issued in a year, the pricing with respect to that year continues. Is this a global issue? Does this happen all the time? Certainly, Your Honor. And we share your surprise that there weren't more cases directly on point. Perhaps that's explained by the fact that this is a generally understood principle of contract interpretation, that the pricing that's applied is the pricing of when the work was ordered. But where does that say that? Those words, I don't see anyone talking about those words. So we agree that in terms of the four corners of the contract, there are three sections that are largely discussed by the parties here, Sections B, F, and I. And there's really only one contract term that discusses the circumstances that we have here where work is performed in one period but isn't finished in that period. Is this normal in terms of contracts? I mean, I was asking of the more global question about how this applies. Do contracts normally take care of this more explicitly? I mean, if this contract were more explicit, we might not be here. I would agree with that last point. If it were more explicit, we wouldn't be here. But, again, it's a general principle of contract interpretation that pricing is set at the time that the work is finished. I think the other side would say it was set and it was set not to be stable. It was set to change as the calendar moved from one year to the next, expressly by the period of performance, not the period of order. So looking at that language in Section F, Your Honor, it does use the language of period performance, but a couple of things. First, we have to remember this is a requirements clause. So the contract is on standby. There is no performance other than through the task order. The primacy of the task orders here tell us that the pricing is defined by when the task order is issued, not when the work is performed. You assert that, but I still don't see what basis you have for that, including in the opening sentence, practically, of the argument or the brief that's laying this out. You just call it the ordering periods with five ordering periods. You just assigned that word to it. I don't see where that comes from. Well, remaining in Section F, which appellant largely relies upon, while it doesn't use the language ordering period, if the rates were tied to the periods of performance, as appellant alleges, then they would be asking for option year 4 rates for the work performed in option year 4. And there was some work performed in option year 4. But, of course, they're arguing exclusively for option year 3 rates. And while it doesn't specifically... Is it possible they're just being a little bit conservative so as not to be a pain in the neck? Perhaps, Your Honor, but that may be a more generous interpretation than the government would propose. I mean, how could they get option year 4 rates when I don't think option year 4 was even exercised, was it? That's right, Your Honor. But the fact remains that it's going to the colloquy between you and opposing counsel. If option year 3 had never been exercised, we would never... Okay, I'm just going to stop you here because here's where my concern is with what the government is saying here and the way it did this. Where is the backstop to this? If they issue a task order under CLIN 2 and they're allowed to continue to modify the task order and add new work and add new funds and change the period of performance, can they do that indefinitely? Well, if there was a concern that the work was out of scope, they could bring a challenge that this work order is out of scope of the task order. If there's a concern that there's some gamesmanship, there could be an allegation of bad faith. But here, Your Honor, these task orders were specific to hurricane relief in the wake of Hurricane Maria. It was all about emergency power for Hurricane Maria. It was defined in that way. So they couldn't mod the task order and say, well, we're going to keep you at CLIN 2 rates, but we're going to move you to hurricane recovery efforts for a completely different hurricane. That's exactly right, Your Honor. What happened when they exercised Option Year 3? When the agency exercised Option Year 3, it gave them the ability to issue new task orders during that option year if, God forbid, there was a new hurricane that wreaked havoc in the region. Luckily, there weren't any hurricanes of the magnitude of Maria, so there were no new task orders issued during Option Year 3. But the fact that the agency exercised Option Year 3, no, it impacts the rights and obligations of the parties flowing from the Option Year 2 task orders. Well, how true is that if they hadn't exercised Option Year 3? How long could they have kept modding the task order for Option Year 2 to deal with Hurricane Maria in Puerto Rico? Well, indefinitely, but this is the contract. What about that six-month time period? I mean, if they didn't exercise the option for Option Year 3, then the contract is expired, right? That's right, Your Honor. But under the Changes Clause, they could continue to extend the period of performance in order to address the discrete issue of hurricane relief in the wake of Hurricane Maria. Can I just double-check something? I didn't see any reference in your brief to the Changes Clause. It doesn't seem to be cited. Does that matter? Since rather a lot of this discussion is kind of turning on that. And we don't, as far as I know, have it in front of us. I believe we did reference the Changes Clause insofar as the government never registered an objection to the changes that they could have done. The contractor. Excuse me, yes, the contractor could have registered an objection under the Changes Clause. I don't think you cited it or discussed it and said, here's why in ordinary government contract law, look at this provision that's in the FAR and it was incorporated. And it is, of course, the FAR provision referenced in each of the modification documents, but I didn't see a legal argument about it. No, Your Honor. We didn't assert a specific legal argument about the Changes Clause. What we did reference is the fact that there were 30-plus modifications. Of course, they were done under the Changes Clause. Some of these modifications were bilateral modifications, including the $850 million that was transferred on to CLIN II. Do I understand right that even if we were to conclude that the Board's decision was wrong, there would be issues to remand for including a waiver issue by virtue of the signing of the repeated HIFTS from 3001 to 2001? Have you made those arguments? I'm sorry, are you asking if the waiver issue is before this Court? No, I know it's not before us. Whether you made it to the Board so that if we sent this case back, that issue would be before the Board. I understand that the waiver issue was presented before the Board, and the Board declined to reach that decision because they found the contract to be unambiguous. Of course, if this Court were to find that there is some ambiguity in the contract, of course, we would urge this Court not to reach that decision. But if the Court did reach that decision, it could be remanded back. I'm pretty sure that, well, I won't speak for him, but let me ask the question in a different way. If we find the contract is unambiguous, but the other way is do they win or do you still have a waiver defense that they should have challenged these modifications throughout on the grounds that they were beyond the scope or something like that? Certainly, Your Honor. We would respect the request that the Board had the opportunity to address that issue in the first instance. I think in the last page of the Board decision, there's a little heading saying WSB's claim is not waived. That's the argument, and then it says government makes this argument, but we don't need to reach it. Certainly. Yes, Your Honor, that's exactly right. I'm not clear exactly what the waiver was. What is the waiver argument? They should have challenged the modifications as being beyond the scope? No, Your Honor. As I understand it, the waiver argument, there's two sides. One is that they waived their right to challenge just under the changes clause. They never brought an objection under the changes clause, and that they never raised an objection under the order limitations clause, which gave the contract the ability to object to orders over a certain size, which these orders ended up doing. And because they never registered those objections, they would have waived their right to challenge them. But they weren't challenged. I mean, they're not challenging whether they should have performed or you could have told them to perform the orders. They're challenging the rate at which you were paying them for performance. Isn't that a different question? I'm sorry, Your Honor, could you? What they're challenging is not that you weren't, you know, they agreed to the mods and they performed the work. Their challenge is exclusively to how much they should have gotten paid for the work that was performed. Isn't that a little different? Well, I'm hesitant, Your Honor, to answer that question because I know the waiver issue is not before this court, and so I'm hesitant to go down that when it's not properly before this court, Your Honor. What is, of course, the issue here is whether or not the contract unambiguously provided for option year two pricing for the task orders issued, work performed under the task orders issued during option year two. Again, the two sections that appellant focuses on, section B and section F, don't address that issue. There's only one section that really discusses what happens when work is issued in one period and spills over to the next period, and that's subsection F of the requirements clause. Because subsection F ties the rates to when the task orders were issued, we would respectfully see... Why shouldn't we consider the modifications that were issued during option year three to be essentially new task orders? Because they plainly weren't new task orders, Your Honor. Task order 3031, 3033, 3001... Right. It's a pretty formalistic view, though, isn't it? Because these modifications aren't just minor modifications or things. They're basically chained. They go from allocating, what, something like $90 million to allocating something like almost a billion dollars? Up to $850 million, Your Honor. But, again, it was all within the very discreet operation of restoring emergency power in the wake of Hurricane Maria and Irma on two islands. It didn't go beyond that. If the work had gone beyond that, of course, it could be challenged as beyond the scope of the task orders. That's just not the situation we have here. What about your friend's argument, which I couldn't quite follow, but maybe you can help or maybe not, that somehow the ordering clause limited the funding for option year two and that those modifications wouldn't have had sufficient funding without the exercise of option three. So what we're really talking about is option year three money. Well, as Your Honor knows, first of all, the money was transferred from option year three back to option year two. But more importantly, they could have done what they did here, which is submitted a request for a JNA and get more money and place the money onto option year two, which is exactly what they did. If there was no option year three, there's no reason to think that they wouldn't have done that anyway. So it's a great need for emergency power in the wake of these hurdles. So just because there were certain ordering limitations and stuff in the contract, it didn't prevent them from modding the contract if they got funding elsewhere. That's exactly right, Your Honor. Right before that, you were talking about section F. Is that at 1051 and 1052? And you said that's really the nub of what gives us this authority to do that. Am I right? That's right, Your Honor. 1051 and 1052. Well, that goes back to the point you were discussing with Judge Toronto earlier, which is this ordinary. I'm sorry, Your Honor. Oh, sorry. If you said section F, then I mistakenly agreed with you. Okay. All right. So it's not section F. No, Your Honor. Section F is what appellant relies upon. Paragraph F of the requirements FAR provision. That's right. Subsection F. The difficulty I think at least the other side raises with that is that that applies only when the contract has ended, not when you shift it into a new option year on a still live contract. Well, if we look at subsection F, we understand that when it uses the language affected period of this contract, that needs to be understood in the context of modification number four, which extended the period through option year two. So at the time, the effective period of the contract was the period that would be through October 21, 2017, which is option year two. The work began during that period, but it wasn't finished during that period. So subsection F plainly ties the rights and obligations of the parties as if it was completed during that period, which is the option year two of the contract. Again, this is really the only piece of the contract that speaks to the issue we have here, work starting in one but moving on to the next. Unless B and F with their language of period of performance in both B and F and language of delivery in F speak to it rather plainly. And this doesn't contradict it because you're now wanting to read a provision whose language addresses only performance after the contract has expired to, by kind of analogy, read it to apply to something it doesn't by terms cover, namely slopping over into a new option year of a still live contract, thereby producing a, in your view, override of the apparent meaning of the contract provisions B and F. That's a little labored. That goes a little bit towards Appellant's argument of order of precedence, but we would submit that section B and section F are not read, cannot reasonably read in the way that Appellant argues. Again, the reference to period of performance, if we understand that in the context of this as a requirements clause with the contractors on standby, there really is no performance outside the context of a task order. And so the pricing, based upon what we see in section I, subsection F of the requirements clause, the pricing is plainly established at the time that the task order is issued. Did you agree with what your friend said about if there were no option year three exercise in terms of the modifications that would be allowable or within the FAR? If there's no option three, he's got the task orders issued. I mean, how long can that continue, working under option two with no option three being exercised? Well, the changes order allows the government to extend the period of performance of the task orders, which is. He said six months, right? He did say six months, Your Honor, and I'm not aware of the limitation in that way. But clearly. That clause, I don't understand why you're talking about that clause, frankly. But does that clause apply to ordering new services rather than changing the Well, the discussion regarding the ordering clause was specifically about new task orders, where here we're extending the period of performance of existing task orders. Whether or not the six-month period involves new task orders, as Your Honor asks, it doesn't. I'm not sure, but it. I mean, if that six-month thing. So if we didn't have option year three and the six-month things applied, even assuming they were allowed to mod the task order and extend the period of performance, they did it past the six-months deadline here, didn't they? They did, Your Honor. In fact, work did go on to the fourth option year. But that doesn't. I mean, even if. The fact that we're in option three is of significance and consequence in terms of what's going on. Because if we didn't have option three, it wouldn't have continued, at least beyond six months, right? The impact of option year three was giving the government the ability to issue new task orders if there was a new. You're confusing me on this point. So let's just assume option year three is irrelevant, because I think that's what you're saying is your position, that option year two was exercised, the task order was issued under option year two, and that you were allowed to continue modding it beyond the original expiration period for option year two. What does this six-month clause have to do with that? Does it cut off the ability to modify the already issued task order, or does it simply prevent ordering new services under? My understanding, Your Honor, of the changes clause in that six-month period is it prevents the government from issuing new task orders that address. But all of the modifications that were done here could have been done and would have been done even in the absence of the non-extension to option year three? Yes, Your Honor. That's my understanding, Your Honor. That's correct. Were there any new task orders issued in option year three? No, Your Honor. There were no new task orders. So essentially option year three had no consequences, I mean unless there's some six-month deadline, which. That's right, Your Honor. It's your point simply, and maybe I'm wrong about this, the task order that was issued was, here's the task order for Hurricane Maria relief. It's occurring in option year two. We're going to order services under that, and you continue to mod it, and you are allowed to do that under the changes clause referenced in those mods, and that the existence of option year three, and whether it was exercised or not, was irrelevant, and this clause that has a six-month provision, it is irrelevant to? Yes, Your Honor. I didn't understand that was the argument in your brief. And then going to the specific contract interpretation issue in the brief is that there's nothing in the contract that unambiguously ties the rates of the work to the period it was performed. Rather, it's tied to. I don't understand why you're making that argument, because it does tie the rates to the period of performance, but the period of performance was changed through these mods. Do you not agree with that? Well, I don't agree with the first point, Your Honor. If we look at section F, it's not defining what rate is to be applied during that period of performance. For example, during this period we have to apply CLIN 3 or CLIN 4. What it's doing is defining the periods in which the government can issue new task orders to address whatever needs arise during that task order. And that's looking at section F of the contract here. Again, all these task orders were issued during option year 2, which is why the government is asserting that there's an unambiguous claim to option year 2 rates to be applied to that work that was performed under this option year 2 task orders. I see I'm over time. If there are no further questions, we'd ask that the court affirm the decision of the board below. Thank you. We'll restore two minutes, everybody. Thank you, Your Honor. A couple of quick points. The changes clause does not authorize ordering new services. The changes clause appears in the appendix 3, page 3 of the SBCA's decision, and it allows changes to how the already ordered work is performed, changes to specifications. Where are you? Appendix 3. 3? 3, page 3 of the board decision. Oh. But they already ordered the services for Hurricane Maria, and what they changed in the mod was the additional money to continue performing them in the period of performance. That's placing new orders, Your Honor. It's not a change within the meaning of the changes clause. This is my problem. In this case, I think it's just a big mess, because if you're saying that these were new orders instead of just modifications under the changes clause, why didn't you tell the government that when they did it? We felt the contract was clear that clearly entitled us to WSP to be paid for option year 3 services at option year 3 rates. But conceptually. Only if the orders were issued under option year 3, and they clearly weren't. There's a disconnect here that there was one task order issued, right? I mean, there's multiple ones, but we can talk about the one, representative one, and it was for these services, and there weren't new task orders issued. You think there are essentially new task orders, but if you thought that, why didn't you go to the government and say this is not a proper modification and challenge it? Your Honor, when you were questioning opposing counsel before, I think you made a valid point that the difference between a new task order and a new order is a little bit formalistic, and that's the right point. But you know that's the way government contracts work. There's a bunch of very formalistic rules and regulations that apply, and if this was issued as a mod rather than a new task order, then unless that mod was illegal or unauthorized, we treat it as a mod. There's one rule that is not in government contracts. There's no government contract rule that says when a task order is issued in a certain period, the contractor is stuck with that pricing regardless of whether the services continue into subsequent years of the contract. So was your answer the reason you didn't challenge this, because you didn't think there was a distinction between whether it was a mod or a new task order because you thought that under the contract and under the rules you would be getting paid under year three rates? Your Honor, it wasn't challenged as such in that conceptual way because we believed and still believe that the contract was clear, and you just have to look to Section B and Section F, which expressly address clean applicability. So was it your view that your rights would be the same whether it was a modification or whether it was a new task order? You would still be entitled to year three rates? Nothing in the contract said... Is the answer yes? Don't give me... I'm confused enough. Is the answer to my question yes or no? The answer is... I may have lost track of your question, Your Honor. The answer... The question was, was it your position and is it your position that irrespective of whether this was called a modified task order or a new task order, the requirements for the pay rate for year three would still inerr because it occurred during year three? Yes, that's correct, Your Honor. Anything further? Thank you. Thank you, Your Honor. We thank both sides and the case is submitted.